**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EMANUEL CULUTUE DOMINGOS, <br><br> Petitioner, <br><br> v. <br><br> JEREMY CASEY, Warden, Imperial Regional Detention Facility, <br><br> Respondent. | Case No.: 3:26-cv-01151-BTM-JLB <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS** <br><br> **[ECF NO. 1]** |

Pending before the Court is Emanuel Culutue Domingos's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART the petition and orders the Respondent to provide him with an individualized bond hearing before a fair, neutral, and open-minded immigration judge.

## I.   BACKGROUND

Domingos entered the United States on January 11, 2025, to seek asylum.  (ECF No. 7-1 ("I-213"), at 2–3; ECF No. 8, Ex. A ("Decl."), ¶ 7.)  He was detained by a Border Patrol Agent twenty miles west of the Calexico Port of Entry.  (I-213, 2–3.)  Domingos admitted that he was an Angolan citizen who lacked legal entry documents and had crossed the

border without being inspected by an immigration officer. (*Id.* at 3.)  Border Patrol began processing Domingos for expedited removal pursuant to 8 U.S.C. § 1225(b)(1).  (*See id.*)

An asylum officer later interviewed Domingos to determine if he had a credible fear of persecution or torture.  (ECF No. 7 ("Return"), at 2.)  Because Domingos's primary language is Chokwe, the interview was not completed.  (*Id.*)  On January 30, 2025, Domingos was given a Notice to Appear form, which placed him in Section 1229a removal proceedings.  (*Id.*)  The immigration court was unable to find a Chokwe interpreter for Domingos's master-calendar hearing on February 11, 2025, so his hearing was continued. (*Id.*)  Each subsequent hearing was continued until March 9, 2026.  (*See id.*; Decl., ¶ 9.)

Domingos filed a petition for the writ of habeas corpus on February 17, 2026.  (ECF No. 1 ("Pet.").)  He is detained at the Imperial Regional Detention Facility.  (Decl., ¶ 13.) He has been in custody for about fourteen months.  (*Id.* ¶ 10.)  There is no evidence in the record that Domingos has received a bond hearing.

## II.   DISCUSSION

### A.   Merits

The Petitioner claims the Due Process clause of the Fifth Amendment prohibits unreasonably prolonged immigration detention without a bond hearing.  (Pet., 6.)  The Respondent claims that the Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(1). (Return, 3–5.)  He claims that noncitizens[1] detained under this statute do not have a Due Process right against prolonged detention. (*Id.* at 5–8.)  Furthermore, the Respondent urges the Court to reject the Petitioner's Due Process claim on the merits because it is not unconstitutionally prolonged.  (*Id.* at 8–10.)

The Petitioner does not contest that he is detained under Section 1225(b)(1).  (ECF No. 8 ("Traverse"), at 1.)  The issue is whether the Petitioner has a right against prolonged detention and, if he does, whether that right was violated by the Respondent.

//

---

[1] This order uses the term "noncitizen" as equivalent to the statutory term "alien."  8 U.S.C. § 1101(a)(3); *see Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020).

### i.   Due Process under Section 1225(b)(1)

The facts and legal arguments are similar to those presented in the Court's recent decision, *Amandeep v. LaRose*, 2026 WL 684654 (S.D. Cal. Mar. 10, 2026).  The Court adopts *Amandeep*'s reasoning and applies it here.

The Court holds that the Due Process clause prohibits unreasonably prolonged detention without a bond hearing.  *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  This protection extends to those detained under Section 1225, such as the Petitioner.  *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process.").

The Court further holds that the holding of *Shaughnessy v. United States ex rel. Mezei* does not apply to this case.  345 U.S. 206 (1953).  The petitioner in *Mezei* had been deemed "a threat to national security."  *Rosales-Garcia v. Holland*, 322 F.3d 386, 413–14 (6th Cir. 2003).  Because the Petitioner here has not received a bond hearing, there has been no determination that he is a danger to national security.  The Court also finds unpersuasive the Respondent's argument that *Barrera-Echavarria v. Rison* binds this Court to find that noncitizens "have no substantive right to be free from immigration detention."  44 F.3d 1441, 1450 (9th Cir. 1995), *superseded by statute*, Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104–208, 110 Stat. 3009–546, *as recognized in Xi v. U.S. Immigr. & Naturalization Serv.*, 298 F.3d 832, 837–38 (9th Cir. 2002).  "[T]he constitutionality of 'indefinite' or 'permanent' detention with no prospect of release" was not at issue in *Barrera-Echavarria* as it is here.  *Id.* at 1450.

Having found that the Petitioner has a right against prolonged detention, the Court must determine whether the Petitioner's detention is so prolonged as to violate the Due Process clause.

//

//

//

26-cv-1151

### ii.    Prolonged Detention

When deciding whether a petitioner's continued detention would violate the Due Process clause, many district courts have looked to the factors articulated in *Banda v. McAleenan*:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings cause [sic] by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal."

385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019) (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)).  The Court finds it appropriate to apply the *Banda* test to the Petitioner's detention as other decisions in this district have done.  *See, e.g.*, *Sandesh v. LaRose*, 2026 WL 622690 (S.D. Cal. Mar. 5, 2026).

The first and "most important factor," length of detention, favors the Petitioner. *Banda*, 385 F. Supp. 3d at 1118.  The Petitioner has been detained for fourteen months, a length of time beyond what many courts have found unreasonable.  *See Abdul Kadir v. LaRose*, 2025 WL 2932654, at *5 (S.D. Cal. Oct. 15, 2025) (collecting cases).  The Court agrees with the Respondent that the length of a petitioner's detention does not, by itself, justify granting habeas relief.  "But neither does that length of detention serve as a safe harbor or insulate Petitioner's case from constitutional review." *Sadeqi v. LaRose*, 2025 WL 3154520, at *3 (S.D. Cal. Nov. 12, 2025).

The second factor, likely duration of future detention, considers "the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (quoting *Jamal A.*, 358 F. Supp. at 859).  The Petitioner has not been scheduled for an asylum merits hearing that would follow a master-calendar hearing.  If his claim is denied at a future merits hearing, he will appeal that decision to the Board of Immigration Appeals, and potentially then to the United States Court of Appeals for the Ninth Circuit.  (*See* Decl., ¶ 12.)  This process may take years.  *See Banda*, 385 F. Supp. 3d at 1119.  The Court finds that this factor weighs in favor of the Petitioner.

The third factor, conditions of detention, is neutral. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119. The Petitioner's declaration states that he is not sleeping well, cannot communicate with his family, experiences racism, and feels "sad and depressed." (Decl., ¶ 13.) This differs from descriptions of confinement that the Court has found to resemble penal confinement. *See, e.g., Amandeep*, 2026 WL 684654 ("[Petitioner] is 'locked behind razor wire and concrete,' wears a 'color-coded jump suit,' . . . and is 'guarded at all times with guards authorized to punish [him] for violations of the rules.'" (quoting Petitioner's Decl., ¶ 10)). Without further information, the Court cannot determine whether the Petitioner's detention resembles penal confinement.

The fourth and fifth factors consider the nature and extent of the delays caused by the parties. The Petitioner argues that the Respondent has delayed his credible fear assessment and removal hearings for more than a year by failing to find a Chokwe interpreter. (Traverse, 10–11.) The Court agrees. The burden is on the Respondent to provide an interpreter for the Petitioner's immigration proceedings. *See* 8 C.F.R. § 208.30(d)(5) ("If the alien is unable to proceed effectively in English, and if the asylum officer is unable to proceed competently in a language the alien speaks and understands, *the asylum officer shall arrange* for the assistance of an interpreter in conducting the interview." (emphasis added)); *cf. Perez-Lastor v. Immigr. & Naturalization Serv.*, 208 F.3d 773, 778 (9th Cir. 2000) ("If an alien does not speak English, deportation proceedings must be translated into a language the alien understands."). Because the Government could not find an interpreter, the Petitioner's immigration proceedings were continued. Accordingly, these factors favor the Petitioner.

The sixth factor, the likelihood that the removal proceedings will result in a final order of removal, is neutral. The Court "is in no position to judge the likelihood of success" of the Petitioner's claim for asylum. *Sandesh*, 2026 WL 622690.

26-cv-1151

The first, second, and combined fourth and fifth factors favor the Petitioner. The third and sixth factors are neutral.  Taken together, the Court finds that the Petitioner's prolonged detention without a bond hearing violates the Due Process clause of the Fifth Amendment.

### B.    Relief

To remedy the violation of the Petitioner's Due Process rights, the Court is ordering an individualized bond hearing with additional safeguards.  *See Singh v. Holder*, 638 F.3d 1196, 1200 (9th Cir. 2011) (holding that noncitizens "facing prolonged detention" are "entitled to a bond hearing before a neutral immigration judge.").  The remedy of release without a bond hearing is denied without prejudice.

The bond hearing must be before a fair, neutral, and open-minded immigration judge who is ordered to determine whether the Petitioner is a danger to the community or a flight risk and what bond conditions, if any, would be appropriate to ensure the Petitioner's appearance.  During the bond hearing, the Respondent shall bear the burden of establishing by clear and convincing evidence that the Petitioner poses a danger or flight risk.  *See Sandesh*, 2026 WL 622690, at *5 ("[I]t [is] appropriate to continue to apply the standard set forth in *Singh* in the case of bond hearings for those subjected to prolonged detention under § 1225(b) to protect the critical liberty interest and due process rights of such individuals.").  If the immigration judge denies bond, the judge must make specific findings as to why the Petitioner is a flight risk or a danger to the community.

### III.    CONCLUSION

For the reasons stated, the petition for a writ of habeas corpus is **GRANTED IN PART**.  The Respondent is ordered to grant Domingos an individualized bond hearing before a fair, neutral, and open-minded immigration judge in accordance with the requirements ordered above.  The hearing must be held no later than April 6, 2026.  The remedy of release without a bond hearing is **DENIED** without prejudice.

The parties shall file a joint statement as to compliance with this writ and order and the result of the bond hearing by 5 p.m. on April 7, 2026.  The Court retains jurisdiction to

enforce the writ.

**IT IS SO ORDERED.**

Dated:  March 23, 2026

Honorable Barry Ted Moskowitz
United States District Judge

26-cv-1151